IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' UNION LOCAL ) | |
| #441 HEALTH and WELFARE FUND and ) | |
| ROBERT GORAM, ROBERT PAYNE, ) | |
| STANLEY SMALL, JAMES GEIGER, SR., ) | |
| JOSEPH VALLEE, and LARRY PIRKLE, in ) | |
| their official capacities as trustees of the ) | |
| Plan, SHEET METAL WORKERS ) | |
| INTERNATIONAL ASSOCIATION LOCAL ) | |
| 441 SUPPLEMENTAL PENSION PLAN, ) | |
| ROBERT GORAM, JOSEPH VALLEE and ) | |
| ROBERT PAYNE, and JAMES GEIGER, in ) | |
| their official capacity as trustees of the Plan; ) | |
| SHEET METAL WORKERS LOCAL 441 JOINT ) | |
| APPRENTICESHIP and TRAINING FUND; ) | |
| ROBERT GORAM, ROBERT PAYNE, ) | |
| STANLEY SMALL, JAMES GEIGER, SR., ) | |
| JOSEPH VALLEE, and WILLIAM DELOCHE ) | |
| and SHEET METAL WORKERS ) | |
| INTERNATIONAL ASSOCIATION, LOCAL ) | |
| 441, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 05-0229-P-B |
| ) | |
| PENETEC CORPORATION, INC., ) | |
| ) | |
|     Defendant. ) | |

ORDER ENTERING DEFAULT JUDGMENT

Pending before this court is plaintiffs' Motion for Default Judgment pursuant to Rule 55(b)(2),

of the Federal Rules of Civil Procedure, with the Affidavits of Kimberly Calametti Walker, Esq.,

(Ex.A(1) and (2), dated August 16, 2005), Robert Goram (Ex.B, dated June 10, 2005), and Robert Payne (Ex.C, dated June 10, 2005), along with a copy of the collective bargaining "Agreement Between Penetec, Inc. And Sheet Metal Workers International Association Local Union 441[,] July 1, 2002 through June 30, 2005" (the "Agreement") (doc.10, Ex.1).  Plaintiffs move the court to enter default judgment in the amount of $71,704.09, against defendant Penetec Corporation, Inc. ("Penetec"), for failure to plead, answer, or otherwise defend this action (doc.10).  After careful consideration of the entire court record, the Motion is GRANTED.

On April 14, 2005, plaintiffs filed this declaratory judgment action under 29 U.S.C. §§ 1132, and 1145, the Employment Retirement Income Security Act ("ERISA"), and § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (the "Act"), against Penetec, a Florida corporation, on behalf of the Sheet Metal Workers Union Local #441 Health and Welfare Fund ("Welfare Fund"), Sheet Metal Workers International Association Local 441 Supplemental Pension Plan ("Pension Plan"), and the Sheet Metal Workers Local 441 Joint Apprenticeship and Training Fund ("Training Fund") (collectively referred to as the "Funds") (doc. 1).

The Summons and Complaint were served upon Penetec through its Florida Registered Agent for service of process "Corporation Service Company[,] 1201 Hays Street[,] Tallahassee, FL 32301" by certified mail (doc.2; doc.13, Ex.1).  The return of service was filed indicating that service was perfected on April 22, 2005 (doc.4; doc.10, Ex.A(2)-Walker Aff., ¶2).

On June 6, 2005, the court noted that more than twenty days lapsed and no appearance or responsive pleading had been filed on Penetec's behalf (doc.5; doc.10, Ex.A(2)-Walker Aff., ¶4).  The court ordered plaintiffs to show cause or make an appropriate motion.  Id.

On June 14, 2005, plaintiffs filed a Response to Show Cause Order contemporaneously with

an Application to Clerk For Entry of Default and Supporting Affidavits and Exhibits in the amount of $71,704.09 which includes damages, interest, attorney fees, and costs (doc.6; doc.10, Ex.A(2)-Walker Aff., ¶5).

On June 17, 2005, the Clerk of Court entered default against Penetec (doc.8).  On August 10, 2005, plaintiffs filed the subject Motion for Entry of Default Judgment (doc.10), with a proposed Default Judgment (doc.11).

Plaintiffs' Complaint alleges, and it is undisputed, that the Funds are trust funds established by collective bargaining pursuant to § 302(c)(5) and (6) of the Act to provide employee welfare benefits to eligible employees of Penetec, and of defraying the cost of apprenticeship.  The Funds are "employee welfare and pension benefit plans" within the meaning of ERISA § 102(1) and (3)(1), and also "multiemployer plans" within the meaning of ERISA, § 1002(37)(A).  Plaintiff/Trustees Robert Goram, Stanley Small, Joseph Vallee, James Geiger, Robert Payne, L.L. Pirkle, and William Deloche are "fiduciaries" within the meaning of ERISA, § 1003(21)(A), and as such are obligated to use reasonable diligence to ensure that the Funds receive all contributions owed to them.  Id.

Plaintiffs allege, and it is undisputed, that Penetec is a signatory to the Agreement with the Sheet Metal Workers International Association Union Local #441 (doc.1; doc.10, Ex.1, p.43), and was a contributing employer (doc.10, Ex.B-Goram Aff., ¶3-4[1]).  The Agreement exclusively governs the relationship between plaintiffs and Penetec.  Id., ¶3.

Plaintiffs allege, and it is undisputed, that Penetec agreed to make contributions to the Welfare Fund, Pension Fund, and the Training Fund, and to honor working assessment deduction authorization

---

[1] Robert Goram is a management Trustee of the Funds, and is currently Chairman of the Welfare Fund and the Pension Plan (doc.10, Ex.B, ¶2-3).

3

and to remit those deductions to the Union (doc.1; doc.10, Ex.B-Goram Aff., ¶4). Penetec is in violation of ERISA, and the Agreement by failing to make required contributions from June 2003 through May 2004, and as a result is delinquent on amounts due (doc.10, Ex.B, ¶5). On May 11, 2004, Penetec executed a Promissory Note for $40,454.64 with a waiver of interest and liquidated damages totaling $14,257.75, applicable pursuant to ERISA and the terms of the Agreement if Penetec remained current on the schedule of payments under the Note (doc.1; doc.12, attachment). Penetec made only one payment of $1,500.00 toward the Note and then defaulted. Under the terms of the Note, upon default, the Funds are to collect $40,454.64, plus interest and liquidated damages in the amount of $14,257.75, totaling $54,712.39$^2$ ($40,454.64 + $14,257.75 = $54,712.39) (doc.1).

Plaintiffs also allege, and it is undisputed, that Penetec is delinquent in remitting the working assessment deductions to the Union from June 2003, to May 2004. The working assessment deductions are wages already earned by Penetec employees that were converted to Penetec's own use, instead of being directed to the Union as authorized by Penetec employees (doc.1). Plaintiff Robert Payne$^3$ testified that the converted dues amount to $13,040.00 (doc.10, Ex.C-Payne Affidavit, ¶3).

Plaintiffs also allege, and it is undisputed, that Penetec is delinquent in payments to the Training Fund, and because of Penetec's failure to submit reports of hours worked, the Training Fund is unable to state the exact amount of the delinquency (doc.1). Mr. Goram testified that Penetec's delinquency to the Training Fund is estimated in the amount of $3,328.00 (doc.10, Ex.B, ¶6).

---

[2] Plaintiffs' Complaint erroneously reflects that the total amount due is $53,342.39 (doc.1).

[3] Robert Payne is the Business Manager for the Sheet Metal Workers Local 441 (doc.10, Ex.C-Payne Aff., ¶6).

Plaintiffs seek the documented delinquent monies owed by Penetec under the Agreement, the Promissory Note, ERISA, and the Act. Plaintiffs also seek a reasonable attorney's fee and the costs incurred in bringing this action (doc.1).

Plaintiffs' counsel of record Kimberly Calametti Walker testified that in pursuing this litigation, the Firm Gardner, Middlebrooks, Gibbons, Kittrell, Olsen, Walker & Hill, P.C., has expended 11.85 hours at the rate of $125.00 per hour, with costs in the amount of $512.45, totaling $1,993.70 (11.85 hrs. x $125.00 per hr. = $1,481.25) + $512.45 = $1,993.70)) (doc.10, Ex.A(1)-Walker Aff., ¶3).

Under ERISA, "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145.

Pursuant to the Agreement regarding the Pension Plan,

> [e]ach employer shall pay to the Sheet Metal Workers National Pension fund a sum equal to two dollars and twenty-one cents ($2.21) per hour for each hour worked by each person covered by the [a]greement employed by the employer...
>
> * * *
>
> The contributions of the Employers shall be used exclusively to provide a retirement or pension benefit plan for employees subject to this [A]greement...

(doc.10, Ex.1, Art. XVI § 1-2, p.33-34).

Regarding the Welfare Fund, the Agreement provides:

> Each Employer shall pay to the Sheet Metal Workers Local #441 Health & Welfare fund [a designated amount per hour] for each hour worked by each person covered by this Agreement employed by the Employer.
>
> * * *
>
> The Employer agrees to furnish the Trustees with all records pertaining to the names,

classifications, and social security numbers of the employees, their wages and such other information as may be required for proper and efficient administration

(doc.10, Ex.1, Art. XV, p.31-33).

Regarding the Training Fund, the Agreement states that

[i]t is mutually agreed between the employer and the union that funds are necessary to establish and maintain an effective training program.  In keeping with this understanding, both parties hereby agree to establish and make part of this Agreement a Joint Journeyman and apprentice Training Trust fund.  Contributions by the Employer shall be made to the Trust Fund on all hours worked by the Journeyman and apprentices...

* * *

Effective July 1, 2002, the Employers shall contribute to the International Training fund, twelve ($0.12) cents per hour on each hour worked by Journeymen and apprentices, and payments to the National Training fun shall be made on or before the 10th day of the succeeding month to the office of the National Training fund.

(doc.10, Ex.1, Art. XII § 9(a) and (b), p.27-28).

Regarding working assessments, the Agreement states that

[t]he Employer agrees to honor working assessment deduction authorizations from its employees...  This assessment shall be deducted weekly by the Employer, who shall remit same to Sheet Metal Workers Local #441.  These deductions shall be noted on the same forms and remitted in the same manner as are the other "Fund" payments covered by this Agreement.

(doc.10, Ex.1, Art. XX, p.38-39).

With regard to Fund payments, generally, the Agreement provides:

Payments to all jointly administered funds as provided in this Agreement shall be due not later than the twentieth (20th) of each month for each Employer subject to this Agreement.  Hourly contributions for the previous work month, if not paid by the twentieth (20th) of the following month, shall be considered delinquent.  Employer contributions shall be paid directly to the Plan, and no person or entity, including an employee, employer, association of employers or union is authorized (a) to receive payment of any kind on the Plan's behalf, or (b) to make any representation or to enter into any agreement on the Plan's behalf.

Contributions are due not later than the 10th of each month for hours worked during the

preceding month, and if not paid by the 20th of the month, shall be considered delinquent. If the Employer fails to pay the full amount of the employer contribution within five (5) days of receipt by registered mail of a notice of delinquency, the Trustees may require employer to pay (a) the full amount of the unpaid Employer Contribution, (b) ***interest on the unpaid Employer Contribution at the rate of twelve percent (12%) per annum from the date such payment was due, and (c) liquidated damages in an amount equal to the greater of the total interest due on the unpaid Employer Contribution or twenty percent (20%) of the total unpaid Employer Contribution***. In the event of employment of an attorney for collection of the Employer Contribution, whether by suit or otherwise, the Employer shall pay the reasonable fees for the Plan's attorney in connection with such collection and, if suit be initiated, all Court costs.

If requested by the Trustees, an Employer shall furnish (a) a written statement from a certified public accountant certifying that the Employer has paid all Employer Contributions required under the Plan, and (b) any additional information the Trustees deem necessary to determine if the Employer is fulfilling all obligations under the Plan.

If requested by the Trustees, an Employer shall make available to the Trustees' designee all records the Trustees deem necessary to determine if the employer is fulfilling all obligations under the Plan... The Plan shall bear the expense of examination <u>unless</u> the examination shows that the Employer failed to make all Employer Contributions due the Plan and the Trustees conclude that the Employer's failure was <u>not</u> a good faith and reasonable error...

(doc.10, Ex.1, Art. XXIII, p.40-42) (emphasis added).

Under ERISA:

In any action under this title by a fiduciary or on behalf of a plan to enforce § 1145 in which a judgment in favor of the plan is awarded, the court shall award the plan-

    (A) the unpaid contributions,
    (B) interest on the unpaid contributions,
    (C) an amount equal to the greater of-
        (I) interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan
            In an amount not in excess of 20 percent (or
            such higher percentage as may be permitted
            under Federal or State law) of the amount
            determined by the court under subparagraph (A),
    (D) reasonable attorney's fees and costs of the action, to be paid
        by the defendant, and
    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); <u>Carriers Container Council, Inc. v. Mobile Steamship Assoc.</u>, 896 F.2d

1330, 1346 (11th Cir.), cert. denied, 498 U.S. 926 (1990).

Herein, as noted, it is undisputed that Penetec agreed to make contributions to the Welfare Fund, Pension Plan, and the Training Fund, and to honor working assessment deduction authorization and to remit those deductions to the Union.  Penetec is in violation of the Agreement and ERISA by failing to make required contributions from June 2003 through May 2004.  Penetec executed a Promissory Note for $40,454.64 with a waiver of interest and liquidated damages totaling $14,257.75, as long as Penetec remained current.  Penetec has defaulted on the Note.  Penetec is delinquent in remitting the working assessment deductions to the Union from June 2003, to May 2004, in the amount of $13,040.00, and is also delinquent to the Training Fund in the amount of $3,328.00.  Further, the attorney's fee for pursuing this action against Penetec amount to $1,481.25 (11.85 hours x $125.00 = $1,481.25), plus costs in the amount of $512.45, totaling $1,993.70 ($1,481.25 + $512.45 = $1,993.70).

Penetec has neither answered, nor otherwise defended plaintiffs' ERISA action.  The compensation plaintiffs seek in this delinquent payment case is mandatory under the Agreement and under ERISA.  Therefore, this court finds that pursuant to 29 U.S.C. § 1132(g)(2), Penetec is liable for the delinquent contributions owed plaintiffs as well as for the attorney's fee and costs.

There is no question but that the court has the authority to impose a default judgment.

> It is well established that the district court has authority to dismiss or to enter default judgment, depending on which party is at fault, for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure.  While the authority is reiterated in some of the Federal Rules of Civil Procedure for particular situations, the power is one inherent in the courts "in the interest of the orderly administration of justice."  It may be exercised sua sponte under proper circumstances.  The exercise of the authority is discretionary, and is subject to review for abuse of discretion.  Dismissal of an action with prejudice and entry of judgment by default are

drastic remedies which should be used only in extreme situations, as the court has a wide range of lesser sanctions.

Flaska v. Little River Marine Construction Co., 389 F.2d 885, 887-88 (5th Cir.), *cert denied*, 392 U.S. 928 (1968) (footnotes and citations omitted).[4]  The Eleventh Circuit continues to follow Flaska:

> Apart from Rule 11, this court has previously recognized the inherent power of a court to impose reasonable and appropriate sanctions upon counsel for abusive litigation practices or for violations of procedural rules or court orders.  See, e.g., Carlucci v. Piper Aircraft Corp., Inc., 775 F.2d 1440, 1447 (11th Cir. 1985); Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1208-11 (11th Cir. 1985); Flaska v. Little River Marine Construction Co., 389 F.2d 885, 888 & n.10 (5th Cir.), *cert*. *denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); Woodham v. American Cystoscope Company of Pelham, N.Y., 335 F.2d 551, 557 & n.15 (5th Cir. 1964).  The court has the power either to dismiss a case with prejudice or to enter a default judgment for failure to prosecute with reasonable diligence or for failure to comply with court orders or rules of procedure.  Flaska, 389 F.2d at 887; see also Link v. Wabash Railroad Co., 370 U.S. 626, 629-33, 82 S.Ct. 1386, 1388-90, 8 L.Ed.2d 734 (1962).

Donaldson v. Clark, 819 F.2d 1551, 1557, n.6 (11th Cir. 1987).  Therefore, this court finds that Penetec be sanctioned for the failure to appear, answer or otherwise defend against plaintiffs' ERISA action.  This court further finds that the attorney's fee requested is reasonable.

Accordingly, it is ORDERED that DEFAULT JUDGMENT be and is hereby ENTERED in favor of plaintiffs and against Penetec, in the amount of $96,681.64.                      .

The following is a breakdown of the amount of the Default Judgment:

1) The amount owing to the Welfare Fund and Pension Plan $54,712.39 (the amount of the Note $40,454.64 + $14,257.75 in interest = $54,712.39) as of April 14, 2005, the date of filing this declaratory judgment action, plus interest pursuant to the Agreement, calculated at 12% per annum from April 15, 2005, through the date of Judgement (a period of 190 days) in the amount of $2,527.00

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all of the decisions of the former Court of Appeals for the Fifth Circuit decided prior to October 1, 1981.

($40,454.64 x 12% per annum = $4,854.56) ÷ 365 days = $13.30 per day) x 190 days = $2,527.00)), and liquidated damages pursuant to the Agreement, in an amount equal to the total interest due on the unpaid Employer Contribution, $16,784.75 ($14,257.75 + $2,527.00 = $16,784.75)[5], totaling $74,024.14 ($54,712.39 + $2,527.00 in interest + $16,784.75 in liquidated damages = $74,024.14);

2) the amount owing on the working assessment deductions as of April 14, 2005, the date of filing this declaratory judgment action - $13,040.00, plus interest pursuant to the Agreement, calculated at 12% per annum from April 15, 2005, through the date of Judgement in the amount of $815.10 ($13,040.00 x 12% per annum = $1,564.80) ÷ 365 days = $4.29 per day) x 190 days = $815.10)), and liquidated damages pursuant to the Agreement, in an amount equal to 20% of the total unpaid Employer Contribution, $2,608.00 ($13,040.00 x 20% = $2,608.00)[6], totaling $16,463.10 ($13,040.00 + $815.10 in interest + $2,608.00 in liquidated damages = $16,463.10);

3) the amount owing to the Training Fund as of April 14, 2005, the date of filing this declaratory judgment action - $3,328.00, plus interest pursuant to the Agreement, calculated at 12% per annum from April 15, 2005, through the date of Judgement in the amount of $207.10 ($3,328.00 x 12% per annum = $399.36) ÷ 365 days = $1.09 per day) x 190 days = $207.10)), and liquidated damages pursuant to the Agreement, in an amount equal to 20% of the total unpaid Employer Contribution,

---

[5] The calculated interest due on the unpaid Employer Contribution is the greater than 20% of the total unpaid Employer Contribution - $8,090.93 ($40,454.64 the amount owing x 20% = $8,090.93) (doc.10, Ex.1, Art. XXIII, p.40, ¶2).

[6] The calculated 20% of the total unpaid Employer Contribution is greater than the amount of interest due on the unpaid Employer Contribution (see doc.10, Ex.1, Art. XXIII, p.40, ¶2).

$665.60 (\$3,328.00 x 20% = \$665.60)[7], totaling \$4,200.70 (\$3,328.00 + \$207.10 in interest + \$665.60 in liquidated damages = \$4,200.70); and

    4) attorney's fees in the amount of \$1,481.25 (11.85 hrs. x. \$125.00 per hr. = \$1,481.25), plus costs in the amount of \$512.45, for a total of \$1,993.70 (\$1,481.25 + \$512.45 = \$1,993.70), resulting in

    the total amount in default is \$96,681.64 (\$74,024.14 to the Welfare Fund and Pension Plan + \$16,463.10 on the working assessment deductions + \$4,200.70 to the Training Fund + \$1,993.70 in attorney's fees and costs = \$ 96,681.64).

    DONE this 21st day of October, 2005.

                              S/Virgil Pittman
                              SENIOR UNITED STATES DISTRICT JUDGE

---

[7] The calculated 20% of the total unpaid Employer Contribution is greater than the amount of interest due on the unpaid Employer Contribution (see doc.10, Ex.1, Art. XXIII, p.40, ¶2)